# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-0942 (KBJ) |
| v. | ) ) ) | |
| LTP GENERATIONS, LLC, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION REGARDING
## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

On May 18, 2017, Plaintiffs Service Employees International Union National Industry Pension Fund and its trustees (collectively "SEIU Fund") commenced this action against Defendants LTP Generations, LLC, d/b/a Oakgrove Springs Care Center and LTP Heritage, LLC, d/b/a Oakhill Springs Care Center seeking, among other things, delinquent benefit fund contributions, interest, and damages, pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*See* Compl., ECF No. 1, at ¶¶ 5–10, 30, 40.) Defendants did not answer SEIU Fund's complaint or defend this action in any way. (*See generally* Docket, Case No. 17-cv-942.) Accordingly, on August 22, 2017, the Clerk of the Court entered default. (*See* Clerk's Entry of Default, ECF No. 8.)

Currently pending before this Court is SEIU Fund's motion for default judgment. (*See* Pls.' Mot. for Default Judgment ("Pls.' Mot."), ECF No. 8.) On June 4, 2018, this

Court referred the case for full case management to a Magistrate Judge, and the Clerk's Office randomly assigned the case to Magistrate Judge Robin M. Meriweather. (*See* Min. Order of June 4, 2018; Min. Entry of June 4, 2018.) On March 14, 2019, Magistrate Judge Meriweather published a 24-page Report and Recommendation ("R&R") recommending that this Court grant in part SEIU Fund's motion. (*See* R&R, ECF No. 9.)[1]

In the R&R, Magistrate Judge Meriweather engaged in a comprehensive analysis of SEIU Fund's motion. (*See generally id.*) The R&R first recommends the entry of a default judgment as to Defendants' liability, explaining that such a judgment is proper because "[SEIU Fund] ha[s] pleaded a viable ERISA claim, and [Defendants] have not opposed the entry of default or default judgment motion." (*Id.* at 9.)[2] It further recommends a finding that Defendants are jointly and severally liable. (*See id.* at 22–23.)

Next, Magistrate Judge Meriweather conducted an extensive review of the damages that SEIU Fund alleged as a result of Defendants' failure to comply with their obligations to contribute to the benefit fund. Relying on a lengthy declaration of Kisha Smith, SEIU Fund's Contribution Compliance Manager, as well as spreadsheets from payroll audits of Defendants, the R&R concludes that SEIU Fund has proven to a "reasonable certainty" damages totaling $132,860.95 in unpaid contributions, interest, liquidated damages, testing fees, and supplemental contributions for the 2012 and 2013 calendar years. (*See id.* at 12 (Table 1); *see also id.* at 11–15.) The R&R further finds

---

[1] The R&R is attached hereto as Appendix A.

[2] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

that SEIU Fund has similarly proven damages totaling $283,755.34 for the Defendants' failure to submit required reports and contributions from February 2013 through April 2018—a recommendation that is $5,877.13 less than the amount requested due to SEIU Fund's apparent double counting of the time period from February 2013 to May 2013. (*See id.* at 17 (Table 2); *see also id.* at 15–18.)  Magistrate Judge Meriweather also considered SEIU Fund's request for $6,550.50 in attorney's fees and costs and found that amount reasonable, recommending the full request be awarded in this case. (*See id.* at 18–21.)

Magistrate Judge Meriweather also considered SEIU Fund's request for injunctive relief, which included a request for a court order requiring Defendants to submit outstanding reports for the period of January 2014 through April 2017, and to pay "'any additional amounts found due and owing following the production of the reports.'" (*Id.* at 21 (quoting Pls.' Mot. at 1); *see also id.* at 21–22.)  She concluded that such relief is permissible under ERISA section 1132(g)(2)(E) and is consistent with the relief granted in similar ERISA cases in this district. (*See id.* at 21–22.) Accordingly, the R&R recommends that this Court grant such relief. (*See id.*)

Magistrate Judge Meriweather's R&R specifically alerts the parties to the requirement that any objections must be filed in writing within 14 days. (*See id.* at 24.) It further informs the parties that any objections must "specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections." (*Id.*)  It also advises "that failure to file timely objections to the findings and recommendations set forth in this report may waive [the parties'] right of appeal

from an order of the District Court that adopts such findings and recommendation."
(*Id.*)  To date, no such objections have been filed.

This Court concludes that Magistrate Judge Meriweather has thoroughly considered the issues raised in this action, and, given that neither party has filed an objection, this Court hereby **ADOPTS** the attached Report and Recommendation's findings and conclusions.

Thus, as set forth in the accompanying Order, SEIU's motion for default judgment will be **GRANTED IN PART**, and SEIU will be awarded: (1) $416,616.29 in unpaid contributions, interest, liquidated damages, and testing fees, and (2) $6,550.50 in attorney's fees and costs.  In addition, the Court will grant the requested injunctive relief and order Defendants to: (1) submit the outstanding remittance reports for the period from January 2014 through April 2017; and (2) remit any additional outstanding contributions that are found as a result of these reports, consistent with the analysis set forth in the R&R.


DATE:  March 29, 2019                    *Ketanji Brown Jackson*
                                         KETANJI BROWN JACKSON
                                         United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND *et al.*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: 17-00942 (KBJ/RMM) ) |
| LTP GENERATIONS, LLC *et al.*, | ) ) |
| Defendants. | ) ) ) |

**REPORT AND RECOMMENDATION**

Plaintiffs Service Employees International Union National Industry Pension Fund ("the Fund") and its trustees (collectively "Plaintiffs") filed this action on May 18, 2017, alleging that Defendants LTP Generations, LLC d/b/a Oakgrove Springs Care Center ("LTP Generations") and LTP Heritage, LLC d/b/a Oakhill Springs Care Center ("LTP Heritage") (collectively "Employers" or "Defendants") failed to comply with pension plan contributions as required by collective bargaining agreements executed with United Healthcare Workers-West, Service Employees International Union ("SEIU"), CTW, CLC ("the Union"). *See* Compl. ¶¶ 29–48, ECF No. 1. Specifically, Plaintiffs seek delinquent benefit fund contributions, interest, and damages, pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. *See* Compl. ¶¶ 30, 40. To date, the Employers have failed to answer or otherwise defend this action. The Clerk of the Court entered default on August 22, 2017, and Plaintiffs now seek default judgment. *See* Pls.' Mot. Default J. ("Pls.' Mot."), ECF No. 8.

This matter was referred to the undersigned for full case management. *See* 6/4/2018 Min. Order Referring Case. Having considered Plaintiffs' motion, Complaint, and the accompanying exhibits, and for the reasons discussed below, the undersigned recommends that the Court GRANT-IN-PART and DENY-IN-PART Plaintiffs' Motion for Default Judgment, ECF No. 8.

## BACKGROUND

### I. FACTUAL BACKGROUND

The Employers entered into two collective bargaining agreements ("CBAs") — one that was effective from April 5, 2012 through April 2, 2014 ("2012 CBA") and another effective from April 3, 2014 through April 2, 2017 ("2014 CBA"). *See* Compl. ¶ 15; *id.*, Ex. 1 ("2012 CBA"), ECF No. 1-1(collective bargaining agreement covering April 5, 2012 to April 2, 2014); *id.*, Ex. 2 ("2014 CBA"), ECF No. 1-2 (collective bargaining agreement covering April 3, 2014 to April 2, 2017). The 2014 CBA provides that the agreement remains "in full force and effect through April 2, 2017, and from year to year thereafter," but allows either party to "serve written notice" of an intent to cancel or amend the agreement at least ninety days in advance of the agreement's renewal. 2014 CBA § 39. The 2014 CBA remains the currently operative agreement because neither party has served such notice. *See* Compl. ¶ 15. Tony Perez, the owner of LTP Generations and LTP Heritage, signed each agreement on behalf of both entities. *See id.* ¶ 12.b; 2012 CBA at 30; 2014 CBA at 30.[1]

Under the CBAs, the Employers agreed to become participating employers in the Fund and to be bound by the provisions of the SEIU Pension Fund's Trust Agreement ("Trust Agreement") and Collections Policy. *See* Pls.' Mot., Decl. of Kisha Smith ("Smith Decl.") ¶¶ 5,

---

[1]  Page numbers cited in this Report and Recommendation reference the ECF page numbers present in the header of the document.

8, ECF No. 8-2; *see also* Compl. ¶¶ 16, 18; 2012 CBA § 16.D; 2014 § 16.D. Each CBA requires the Employers to make monthly pension contributions of $0.35 per hour for certain covered employees. Compl. ¶ 17; 2012 CBA § 16.C; 2014 CBA § 16.C. The CBAs require that such contributions be made on or before the fifteenth day of the month following the month for which the contributions were being made. *Id.* In addition, the CBAs require the Employers to submit a remittance report, including certain information required by the Fund, with their contributions each month. *See* Compl. ¶ 17; 2012 CBA § 16.C.5; 2014 CBA § 16.C.5.

### A.    Critical Status and the Rehabilitation Plan

From January 1, 2009, the Fund was certified as being in "critical status" under the Pension Protection Act of 2006. Compl., Ex. 6, SEIU National Industry Pension Fund Rehabilitation Plan ("Rehabilitation Plan") at 1, ECF No. 1-6; *see also* Compl. ¶ 23. The Fund remained in critical status for subsequent plan years beginning on January 1, from 2010 through 2017. *See* Smith Decl. ¶ 9; Compl. ¶ 23. The Fund notified participating employers of this status by letters sent in April of each year.[2] *See id.*; *see also* Compl., Ex. 5, ECF No. 1-5.

As required by the Pension Protection Act, the Fund implemented a Rehabilitation Plan that requires participating employers to pay certain surcharges and supplemental contributions. *See* Smith Decl. ¶¶ 10–11; *see also* 29 U.S.C. § 1085(a)(2). *See generally* Rehabilitation Plan.

---

[2]    Plaintiffs' Notices of Critical Status dated April 30, 2012 and April 30, 2013, appear to provide notice for certifications which occurred in March 31, 2011 and March 31, 2012, respectively. *See* Compl., Ex. 5 at 37, 46. Those letters either contain a typographical error or were sent outside of the thirty-day period within which notifications are due. *See* 29 U.S.C. § 1085(b)(3)(D)(i) (requiring that "the plan sponsor shall, not later than 30 days after the date of the certification, provide notification of the endangered or critical status to," *inter alia*, "the participants and beneficiaries, [and] the bargaining parties."). However, given that the Employers are in default and thus the allegations in the complaint must be deemed admitted, *see Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014), the Court accepts Plaintiffs' assertion that they provided notice to the Employers.

The Rehabilitation Plan includes two schedules for supplemental contributions — a Default Schedule and a Preferred Schedule — and requires that one must be implemented for collective bargaining agreements "entered into or renewed after January 1, 2010." Rehabilitation Plan at 1; *see also* Smith Decl. ¶ 11. Defendants were placed in the Default Schedule in May 2012. Compl. ¶ 25; Smith Decl. ¶ 12. The Default Schedule requires the Employers to make: (1) from May 2012 through April 2013, supplemental contributions of 47.4% of all owed contributions; and (2) from May 2013, supplemental contributions of 62.5% of all owed contributions. *Id.*

**B.     Audit of 2012–2013 Payroll Records**

The Fund's Collections Policy also authorizes the Fund to conduct an audit of any participating employer, as participating employers self-report monthly contribution obligations. *See* Smith Decl. ¶¶ 14–15; Compl., Ex. 4 ("Collections Policy") § 1.3–4, ECF No. 1-4. The Collections Policy further provides that if the audit reveals underpayment, then the employer must remit the underpaid contribution amount, in addition to "interest at a rate of 10% per annum on the contribution underpayment, and liquidated damages at the rate of 5% of the contribution underpayment (or 20% after the initiation of litigation)." Smith Decl. ¶ 16; Collections Policy § 4.10(b)–(c). In addition, the Collections Policy requires the employer to pay a testing fee. Smith Decl. ¶ 16. In March 2016, the Fund conducted a payroll audit of the Employers for 2012 and 2013. *See* Compl. ¶ 27; Smith Decl., Exs. B & C. The audits revealed discrepancies in the Employers' payroll records, resulting in underpaid contributions. *See* Compl. ¶ 27; Smith Decl. ¶ 19.

**II.     PROCEDURAL BACKGROUND**

The Fund and its Trustees initiated this action against the Employers on May 18, 2017, alleging violations of ERISA and seeking damages of unpaid collectively bargained

contributions, interest, liquidated damages, and supplemental contributions. *See* Compl. ¶ 1. Per proof of service filed with the court on August 11, 2017, Plaintiffs served each Employer on July 14, 2017. *See* Return of Service, ECF Nos. 4 & 5. As neither Defendant filed an answer, the Clerk of the Court entered default on August 22, 2017. *See* Entry Default, ECF No. 7. Plaintiffs filed a motion for default judgment on June 1, 2018, seeking $422,493.42 in unpaid contributions, liquidated damages, interest, and audit fees, as well as the production of outstanding reports, in addition to $6,550.50 in attorney's fees and costs. *See* Pls.' Mot. at 1. Judge Ketanji Brown Jackson referred this matter to the undersigned for full case management. *See* 6/4/2018 Min. Order Referring Case.

## LEGAL STANDARD

A court may "enter default judgment [under Federal Rule of Civil Procedure 55] when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Peak v. District of Columbia*, 236 F.R.D. 13, 15 (D.D.C. 2006) (citing *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)). Although courts strongly prefer to resolve claims on the merits, default judgment is appropriate where "the adversary process has been halted because of an essentially unresponsive party." *J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (quoting *Cumis Ins. Soc'y, Inc. v. Billups*, No. 10-1478 (ESH), 2010 WL 4384228, at *2 (D.D.C. Nov. 4, 2010)) (internal quotation marks omitted); *see Darby v. McDonald*, 307 F.R.D. 254, 257 (D.D.C. 2014) (noting courts disfavor default judgments and will resolve disputes based on their merits when possible). Rule 55 establishes a two-step procedure that a plaintiff must follow to obtain default judgment. First, the plaintiff must ask the Clerk of the Court to enter default based on a party's failure "to plead or otherwise

defend" in response to the complaint. FED. R. CIV. P. 55(a). Second, after the Clerk has entered default, the plaintiff must file a motion for default judgment. *Id.* 55(b)(2).

Once a plaintiff has satisfied Rule 55's procedural requirements, "[t]he determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Upon entry of default, "the defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (internal quotation marks omitted); *see also Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). Default judgment is appropriate only if those admitted allegations are legally sufficient to state a claim. *See Saint-Jean v. D.C. Pub. Sch. Div. of Transp.*, 815 F. Supp. 2d 1, 4 (D.D.C. 2011); *Harris v. U.S. Dep't of Justice*, 600 F. Supp. 2d 129, 136–37 (D.D.C. 2009) ("[U]nless the complaint states a claim upon which relief may be granted as to the defendants who have defaulted, default judgment is not justified."). Finally, default judgment is appropriate when the defendant is "considered a 'totally unresponsive' party whose failure to 'respond to the summons and complaint, the entry of default, and the motion for a default judgment' demonstrates plainly willful behavior." *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013) (quoting *Teamsters Local 639-Emp'rs Health Tr. v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008)).

A determination that default judgment is appropriate "establishes a defendant's liability." *Auxier Drywall*, 531 F. Supp. 2d at 57. However, even if a defendant is in default on a legally viable claim, the plaintiff may not be entitled to damages in the amount requested. *See*

*Limbaugh Co. v. Ten Hoeve Bros.*, 126 F. Supp. 3d 105, 108 (D.D.C. 2015). The Court must independently determine the sum to be awarded unless the amount of damages is certain. *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (quoting *Adkins*, 180 F. Supp. 2d at 17). The Court may base that finding on evidence introduced at an evidentiary hearing or rely on documents and affidavits submitted by the parties. *See* FED. R. CIV. P. 55(b)(2); *Serv. Emps. Int'l Nat'l Indus. Pension Fund v. Tandem Dev. Grp., LLC*, 274 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30).

## ANALYSIS

### I. JURISDICTION AND VENUE

Under Section 502(e) of ERISA, district courts of the United States "shall have exclusive jurisdiction" of actions brought under that section; venue is appropriate in "the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[;] and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Where a federal statute authorizes nationwide service of process, "minimum contacts with the United States suffice" to confer personal jurisdiction. *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004); *see also Serv. Emps. Int'l Union Health & Welfare Fund v. N. Am. Cleaning Servs. Co.*, 264 F. Supp. 3d 1, 4 (D.D.C. 2017). "ERISA's venue provision has been interpreted to authorize nationwide service of process." *See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 75 (D.D.C. 2017) (quoting *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 28 (D.D.C. 2013)) (internal quotation marks omitted). Thus courts may exercise personal jurisdiction over ERISA defendants who have minimum contacts with the

United States, regardless of whether the defendants have had contacts with the jurisdiction where the suit was filed.

This Court is the proper venue and has personal jurisdiction over both Defendants. First, venue in this district is proper because the Fund is administered in the District of Columbia. Compl. ¶ 3; *N. Am. Cleaning Servs. Co.*, 264 F. Supp. 3d at 4. Second, minimum contacts (and consequently personal jurisdiction) exist because both LTP Generations and LTP Heritage are "organized under the laws of the State of California" and maintain mailing addresses in California. *See* Compl. ¶¶ 8, 10; *Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 173 (D.D.C. 2003) (finding minimum contacts because defendant corporation "is a citizen of the United States").

## II.     LIABILITY

Default was properly entered against the Employers because they have failed to respond to the complaint or any other filings, including the default judgment motion. *See Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147 (D.D.C. 2016); *Saint-Jean*, 815 F. Supp. 2d at 3; *see also* Default, ECF No. 7. After the Employers failed to answer the summons and complaint, Plaintiffs asked the Clerk of the Court to enter default, which the Clerk subsequently entered on August 22, 2017. *See* Default. Consequently, the Employers are deemed to have admitted the allegations in the complaint. *See Robinson*, 4 F. Supp. 3d at 178. Those admissions will establish the Employers' liability provided that "the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (quoting *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005)) (internal quotation marks omitted).

Plaintiffs have stated a legally sufficient claim under ERISA. "ERISA requires employers to make contributions to multiemployer plans 'in accordance with the terms and

conditions' of the relevant collective-bargaining agreements." *Smith & Rogers Constr.*, 201 F. Supp. 3d at 147–48 (quoting 29 U.S.C. § 1145); *accord* 29 U.S.C. § 1145. The Fund is a multiemployer pension plan within the meaning of ERISA. *See* Compl. ¶ 5; Smith Decl. ¶ 3. The Employers entered into two successive collective bargaining agreements ("CBAs") under which they agreed to become participating employers in the Fund, bound by the provisions of the Trust Agreement and Collections Policy. *See* Smith Decl. ¶¶ 5–8; *see also* Compl. ¶¶ 15, 18; 2012 CBA § 16.D; 2014 CBA § 16.D. Each CBA required the Employers to make monthly contributions and remittance reports specifying the number of compensable hours worked per covered employee to the Fund in accordance with the Trust Agreement. *See* Smith Decl. ¶¶ 5, 13; Compl. ¶¶ 17, 19; 2012 CBA § 16.C; 2014 CBA § 16.C.

In March 2016, the Fund performed an audit of the years 2012 through 2013 which revealed that the Employers had failed to make the appropriate amount of contributions; the audit showed discrepancies in the hours worked by covered employees compared with the hours reported by the Employers. *See* Smith Decl. ¶¶ 18–21; Compl. ¶ 27; *id.*, Ex. 7 (audit of LTP Generations); *id.*, Ex. 8 (audit of LTP Heritage). In addition, from February 2013 through April 2018, the Employers failed to contribute or remit reports to the Fund. *See* Compl. ¶¶ 31–32, 41–42; Smith Decl. ¶ 24. Accordingly, Plaintiffs have shown that the Employers failed to meet their obligations under ERISA and therefore have stated a claim upon which relief can be granted.

Having considered the complaint and the evidence filed with the default judgment motion, the undersigned recommends that the Court find the Employers liable and enter default judgment on liability. Plaintiffs have pleaded a viable ERISA claim, and the Employers have not opposed the entry of default or default judgment motion. Therefore, default judgment is appropriate. *See Smith & Rogers Constr.*, 201 F. Supp. 3d at 148 (entering default judgment

where defendant failed to respond to the complaint or present a meritorious defense); *Yoccabel*, 293 F.R.D. at 17 (concluding default judgment was warranted where defendant was wholly unresponsive in the action).

## III. DAMAGES

Having found liability, the Court next must determine the damages to which Plaintiffs are entitled. "Plaintiffs must prove these damages to a reasonable certainty." *Smith & Rogers Constr.*, 201 F. Supp. 3d at 148 (quoting *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68) (internal quotation marks omitted). The Court "may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Boland v. Hetrick*, 277 F. Supp. 3d 112, 118 (D.D.C. 2017) (quoting *Yoccabel*, 293 F.R.D. at 17) (internal quotation marks omitted).

When, as here, a pension plan seeks contributions under a collective bargaining agreement, and default judgment has been awarded, "ERISA provides that the court must award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 70 (D.D.C. 2002) (footnotes omitted) (citing 29 U.S.C. § 1132(g)(2)); *see also Liberty House*, 232 F. Supp. 3d at 76. The first three — unpaid contributions, interest, and liquidated damages — are "considered 'sums certain' because their calculations are mandated by ERISA and party agreements." *Yoccabel*, 293 F.R.D. at 18. However, the reasonableness of requested attorney's fees "is a judgment call which only the Court can make." *Hetrick*, 277 F. Supp. 3d at 118 (quoting *Liberty House*, 232 F. Supp. 3d at 76) (internal quotation marks omitted).

Finally, although Rule 54(c) limits available damages to the amount pleaded in the complaint, a court granting default judgment relief for an ERISA claim may award damages that accrue after the complaint was filed if the defendant "was on notice" that Plaintiffs "sought an award in excess of the amount specifically calculated in the complaint." *Yoccabel*, 293 F.R.D. at 18–19; *see also Hetrick*, 277 F. Supp. 3d at 118–19. Here, the undersigned considers Plaintiffs' request for damages accrued after the complaint was filed, because the complaint gave the Employers notice that Plaintiffs sought to recover amounts "that become due and owing from Defendants to Plaintiffs during the pendency of this litigation." *See* Compl., Count I ¶ 5 & Count II ¶ 5; *see also Yoccabel Const. Co.*, 293 F.R.D. at 19 (finding that defendant was "on notice" that plaintiffs sought damages "that accrued after the complaint was filed" where the complaint requested "other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue, and/or be found due and owing, subsequent to the filing of this Complaint." (internal quotation marks omitted)); *Hetrick*, 277 F. Supp. 3d at 119 (considering similar language and finding the same).

### A. Amounts Owed Under the Audit for the 2012 and 2013 Calendar Years

Plaintiffs seek delinquent and unpaid contributions from both LTP Generations and LTP Heritage due to the underreporting and underpaying of employee hours in 2012 to 2013, in addition to associated interest, liquidated damages, and testing fees. Pls.' Mot., Pls.' Mem. in Supp. of Mot. for Default J. ("Pls.' Mem.") at 13, ECF No. 8-1. In March 2016, and pursuant to the Fund's Collections Policy, the Fund conducted payroll audits of the Employers for 2012 and 2013. Smith Decl. ¶ 18; Compl. ¶¶ 34, 44. Because participating employers self-report to the Fund, the audit was the Fund's only way to verify employer compliance with the Trust Agreement. *See* Smith Decl. ¶¶ 14–15; Compl. ¶ 21; Collections Policy § 4.

In support of their claim for damages, Plaintiffs provide the declaration of Kisha Smith, the Fund's Contribution Compliance Manager, and spreadsheets from a March 2016 payroll audit of the Employers. *See id.*; Smith Decl. ¶ 1 & Ex. B at 16–24 ("LTP Generations Audit"), Ex. C at 25–33 ("LTP Heritage Audit"). The audit revealed that the Employers owed the following amounts:

| TABLE 1 | LTP Generations | LTP Heritage |
|---|:---:|:---:|
| **Unpaid contributions** | $25,214.00 | $24,122.26 |
| **Interest (through June 2018)** | $20,259.04 | $19,355.68 |
| **Liquidated Damages** | $7,757.40 | $7,425.01 |
| **Testing Fee** | $1,075.90 | $1,075.90 |
| **PPA Supplemental Contribution** | $13,572.98 | $13,002.78 |

Smith Decl. ¶¶ 19–20.

The undersigned has reviewed the agreement between the parties, the applicable law, the declaration and evidence submitted, and is satisfied that Plaintiffs have proven the damages set forth in Table 1 with "reasonable certainty." *Smith & Rogers Constr.*, 201 F. Supp. 3d at 148 (quoting *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68). The 2012 and 2014 CBAs required the Employers to make contributions to the Fund for all covered employees at a rate of 35 cents per hour worked over the term of the CBA. *See* Smith Decl. ¶ 7; 2012 CBA § 16.C.3; 2014 CBA § 16.C.3. Ms. Smith's declaration and the Fund's audit spreadsheets show that LTP Generations owed $25,214.00 in contributions due to discrepancies in the reporting of hours worked by eligible employees. *See* Pls.' Mem. at 9; Compl. ¶ 34. *See generally* LTP Generations Audit. Likewise, the declaration and audit spreadsheets show that LTP Heritage owed $24,122.26 in contributions due to discrepancies in the reporting of hours worked by eligible employees. *See* Pls.' Mem. at 9; Compl. ¶ 44. *See generally* LTP Heritage Audit. In addition, due to the Fund's critical status under the Pension Protection Act during both 2012 and 2013, the Fund's

Rehabilitation Plan required the Employers to make supplemental contributions to the Fund. *See* 29 U.S.C. § 1085(a)(2) (requiring multiemployer plans to adopt and implement rehabilitation plans when deemed to be in "critical status"); Smith Decl. ¶¶ 9, 12. Under the Rehabilitation Plan's Default Schedule, the Employers were obligated to make supplemental contributions of 47.4% of all owed contributions from the relevant time period of May 2012 through April 2013, and of 62.5% of all owed contributions from May 2013 thereafter. *See* Smith Decl. ¶ 12; Rehabilitation Plan at 6–7. The supplemental PPA contributions for LTP Generations totals $13,572.98 and for LTP Heritage totals $13,002.78. Smith Decl. ¶¶ 19–20 & Exs. B–C.

The Employers also must pay interest on the unpaid contributions, pursuant to the Collections Policy and 29 U.S.C. § 1132. *See* 29 U.S.C.A. § 1132(g) ("[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."); Collections Policy § 4.10(b); Smith Decl. ¶ 16; *see also Liberty House*, 232 F. Supp. 3d at 76. The Collections Policy provides that interest be "[c]alculated monthly at 10% per annum," which equates to approximately 0.83% per month. Collections Policy § 4.10(b); Smith Decl. ¶ 16. The undersigned recommends that the Court award Plaintiffs the interest set forth in Table 1.[3]

---

[3] The Court's review of the audit spreadsheets attached to Ms. Smith's declaration suggests that Plaintiffs are requesting interest amounts lower than what the Collections Policy allows. *See* Smith Decl., Exs. B & C. Using LTP Generations' audit as an example, upon calculating interest (0.85% per month) for the 2012 and 2013 audit months and totaling the results, total interest equals $20,497.34, which is greater than the requested $20,259.04. To provide context, the following excerpt illustrates how these numbers were calculated:

| | Underpaid | 0.83% per month | Months until 6/2018 | Total |
|---|---|---|---|---|
| January 2013 | $2,258.74 | 18.74754 | 65 | 1218.59 |
| February 2013 . . . | $1,184.38 | 9.830354 | 64 | 629.1427 |

However, as Plaintiffs request only the sum certain identified in Table 1, the undersigned recommends awarding the amount requested. *See Liberty House*, 232 F. Supp. 3d at 80 n.6.

The Employers also must pay liquidated damages, pursuant to the Collections Policy and 29 U.S.C. § 1132. Those damages equal the greater of "[t]he interest on the delinquent contributions" or "20% of the delinquent contributions." Collections Policy § 5.2; Smith Decl. ¶ 16; *see also* 29 U.S.C. § 1132(g)(2)(C)(ii) (which mandates "liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A) [unpaid contributions]"). The Fund assessed liquidated damages at a rate of 20% for underpaid contributions. *See* Smith Decl. ¶ 16. In addition, liquidated damages were assessed on total delinquent contributions — the sum of unpaid contributions and PPA supplemental contributions. *See id.* ¶ 21. Table 1 accurately reflects the liquidated damages to which Plaintiffs are entitled and reflects the application of the Collections Policy rate to the sum of the unpaid contribution and supplemental contributions identified above.

Plaintiffs also are entitled to receive testing fees for their audits of the Employers. *See* Pls.' Mem. at 13; Smith Decl. ¶ 16; Collections Policy § 4.10(c) (obligating audited employers to pay testing fees). Those fees comprise "the cost of the payroll review, including the auditor's time and expenses." Smith Decl. ¶ 16. ERISA authorizes the court to enforce a CBA requirement to pay testing fees. *See* 29 U.S.C. § 1145 ("[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."); *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 798 (D.C. Cir. 1998) (finding that if the parties' agreement "requires employers who are in default to pay routine auditing fees, ERISA empowers

the Trustees to enforce that requirement"). Accordingly, the Employers owe testing fees in the amounts listed in Table 1.

### B. Amounts Owed for Employers' Failure to Remit Contributions and Reports from February 2013 through April 2018

Plaintiffs also seek damages for the Employers' failure to timely remit contributions from February 2013 through May 2013, or to submit remittance reports and contributions from June 2013 through April 2018. *See* Pls.' Mem. at 14; Smith Decl. ¶ 24. Specifically, Plaintiffs contend that they are entitled to interest and liquidated damages based on the Employers' failure to submit contributions to the Fund from February 2013 through May 2013. *See* Smith Decl. ¶ 24; Collections Policy §§ 2.4 & 5. Plaintiffs also assert that the Employers failed to submit the required remittance reports and monthly contributions from January 2014 through April 2018 and Plaintiffs seek contributions, interest, and liquidated damages to redress those failures. *See* Smith Decl. ¶¶ 26–32. For the time period of June 2013 through December 2013, Plaintiffs indicate that the 2013 audit covered the "full amount of contributions" owed. *See id.* ¶ 25.

To the extent that Plaintiffs seek damages related to February 2013 through May 2013, the recommended damages discussed *supra* for the 2013 payroll audit include liquidated damages and interest for the Employers' failure to make contributions in February through May 2013. *See id.* ¶ 25 (explaining that the audit covered the entire 2013 calendar year); *supra* Part III.A (recommending award for unpaid contributions, interest, and damages); *see also* LTP Generations Audit at 22–23; LTP Heritage Audit at 31–33. Allowing Plaintiffs to recover liquidated damages and interest for that period based on the Employers' alleged delay in making contributions or failure to submit remittance reports would constitute a double recovery. Plaintiffs do not appear to seek a double recovery, and Ms. Smith states that her damages calculation, reflected in Table 2, *infra*, covers only the contributions, interest, and liquidated

damages from January 2014 through April 2018.  *See* Smith Decl. ¶ 32.  However, the

spreadsheets and calculations underlying Ms. Smith's proposed damages award appear to

indicate that the sums in Table 2 encompass amounts attributable to delinquent contributions

from February 2013 to May 2013.  *See id.*, Ex. D at 35 & Ex. E at 38.  The undersigned

recommends that if the trial court accepts the recommended amount of damages in Part III.A,

*supra*, the trial court should deny any further damages based on untimely or delinquent

contributions, or a failure to submit remittance reports, from February 2013 to May 2013.

Plaintiffs are entitled to damages attributable to the Employers' failure to submit the

required reports and monthly contributions from January 2014 through April 2018.  *See*

*Robinson*, 4 F. Supp. 3d at 178 ("[T]he defaulting defendant is deemed to admit every well-

pleaded allegation in the complaint." (quoting *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30)

(internal quotation marks omitted)); Compl. ¶¶ 32, 42.  Under Section 2, Paragraph 6 of the

Collections Policy, when the Fund does not receive "proper remittance reports," "the Fund

Office shall estimate the contributions due based on the most recent contributions remitted to the

Fund and the Employer shall be deemed delinquent in its contributions in that amount, as a

minimum, in any subsequent legal action."  Collections Policy § 2.6; *see also* Smith Decl. ¶ 27.

Given that the audit used the Employers' payroll and tax records to reconstruct the hours worked

by covered employees from June 2013 through December 2013, *see* Smith Decl. ¶ 25,[4]

December 2013 provides the most recent available data on contributions that the Employers

should have remitted to the Fund.  Accordingly, Plaintiffs appropriately used the audit's sum of

---

[4]   Although Ms. Smith's declaration refers to the declaration of Andre Joseph, no such
declaration is attached to Plaintiffs' Motion.  However, Mr. Joseph is the signatory to the cover
letters accompanying the audit documents.  *See* Smith Decl., Ex. B at 17 & Ex. C at 26.

employee work hours from December 2013 to estimate monthly contributions for January 2014 through April 2018. *See id.* ¶ 28.

The undersigned has reviewed the parties' agreements, applicable law, and Ms. Smith's declaration, and concludes that Plaintiffs have proven with "reasonable certainty" that they are entitled to additional contributions, interest and damages for January 2014 through April 2018. *Smith & Rogers Constr.*, 201 F. Supp. 3d at 148 (quoting *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68). Ms. Smith's declaration explains the process she used to calculate base contributions, PPA supplemental contributions, total contributions, interest, and liquidated damages, and includes spreadsheets supporting her calculations. *See* Smith Decl. ¶¶ 28–32; *id.*, Ex. D (LTP Generations Schedule of Amount Due for February 2013 through April 2018); *id.*, Ex. E (LTP Heritage Schedule of Amount Due for February 2013 through April 2018). Based on these calculations, and excluding any award for February 2013 through May 2013, the undersigned recommends that the trial judge award Plaintiffs the following amounts: [5]

| TABLE 2 | **LTP Generations** | **LTP Heritage** |
|---|---|---|
| **December 2013 Hours** | 5,321 hours | 3,959 hours |
| **Unpaid contributions (including PPA Supplemental)** | $117,296.39 | $82,091.17 |
| **Interest (through June 2018)** | $23,884.55 | $17,390.98 |
| **Liquidated Damages** | $24,800.60 | $18,291.65 |

---

[5] It appears that Plaintiffs' claim for interest on these unpaid contributions may be lower than what is allowed under the Collections Policy. The Collections Policy sets forth a rate of 10% per annum, which equates to approximately 0.83% per month. Collections Policy § 5. The spreadsheet numbers are slightly lower than the Court's independent calculation. For example:

| | **Underpaid (1/2014)** | **0.83% per month** | **Months until 6/2018** | **Total** | **Spreadsheet** |
|---|---|---|---|---|---|
| LTP Generations | $2,476.23 | $20.55 | 53 | $1,189.15 | $1,063.08 |
| LTP Heritage | $909.33 | $7.55 | 52 | $392.60 | $390.39 |

Smith Decl., Exs. D & E. However, as Plaintiffs requested a sum certain, the undersigned recommends using Plantiffs' request as the starting point for any award (adjusted to avoid double recovery), instead of a higher figure. *See Liberty House*, 232 F. Supp. 3d at 80 n.6.

This recommended award is $5,877.13 less than the award that Plaintiffs requested, given the exclusion of the February through May 2013 time period.

### C. Attorney's Fees and Costs

Plaintiffs also seek $6,550.50 in attorney's fees and costs. *See* Pls.' Mem. at 16–17. Under ERISA, Plaintiffs are entitled to the "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D); *see also Smith & Rogers Constr.*, 201 F. Supp. 3d at 148–49. In support of their request, Plaintiffs provide the declaration of their lead attorney in this lawsuit, Olga M. Thall, an associate of the firm Mooney, Green, Saindon, Murphy & Welch, P.C. ("Mooney Green"). *See* Pls.' Mem. at 17; Pls.' Mot., Decl. of Olga M. Thall ("Thall Decl.") ¶¶ 1–2, ECF No. 8-3.

Ms. Thall's declaration describes the services provided and the expertise and experience of Mooney Green and the attorneys and paralegal that worked on the matter. *See Bricklayers & Trowel Trades Int'l Pension Fund v. Barron*, 317 F. Supp. 3d 157, 162–63 (D.D.C. 2018) (considering the services provided, law firm expertise and experience, and details of the case preparation and work); *Smith & Rogers Constr.*, 201 F. Supp. 3d at 149 (same). Ms. Thall states that Mooney Green specializes in labor and employment law, with a particular focus on labor unions and multiemployer benefit plans. Thall Decl. ¶ 5. She indicates that two associates, herself and Lauren P. McDermott, both with over five years of experience, have represented labor unions and collectively bargained employee benefit plans, and have litigated ERISA cases. *Id.* ¶¶ 6–7. Her declaration further notes that paralegal Caitlin M. Cooper assisted on the matter and had at least one year of experience as of the filing of Plaintiffs' motion. *See id.* ¶ 8.

Ms. Thall asserts that the attorneys collectively billed 30.9 hours on this matter, and Ms. Cooper billed 15.1 hours. *See id.* ¶ 11. The invoice attached to Ms. Thall's declaration describes

the work performed, who performed the work, and the associated number of hours.  *See id.*, Ex. A ("Invoice") at 8–22, ECF No. 8-3.  That invoice confirms Ms. Cooper's hours, but shows that Ms. Thall and Ms. McDermott collectively billed 22.3 hours on this matter, excluding redactions.[6]  *See id.*  These hours covered researching the Employers and the bargaining unit, drafting and filing court filings, arranging for service, and communicating with the client.  Thall Decl. ¶ 12.  After considering the declaration and the entries in the invoice, the undersigned finds that Plaintiffs have "justified the hours expended in this case," specifically 22.3 attorney hours and 15.1 paralegal hours.  *Smith & Rogers Constr.*, 201 F. Supp. 3d at 149; *see also Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) ("[T]he court may rely on detailed . . . documentary evidence to determine the appropriate sum for the default judgment." (quoting *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30) (internal quotation marks omitted)); *Barron*, 317 F. Supp. 3d at 163.

Next, the Court considers whether the rate charged by Mooney Green is reasonable. Pursuant to a retainer agreement between the firm and the Fund, the rates charged varied based on the status of the case.  *See* Thall Decl. ¶ 10.  For attorneys, the firm charged $150 per hour for work performed prior to the start of litigation and $195 per hour post-commencement of litigation.  *Id.*  For paralegals, the firm charged $120 per hour.  *Id.*  Accordingly, Ms. Thall asserts that Plaintiffs incurred a total of $4,738.50 for the work performed by attorneys and $1,812 for the work performed by the paralegal.[7]  *Id.* ¶ 11.

---

[6]  Ms. Thall's declaration indicates that the Plaintiffs "are not billing for certain amounts" and the invoice provided with Ms. Thall's declaration contains redacted entries.  Thall Decl. ¶ 3 n.1; *see* Invoice.

[7]  The Invoice reflects entries for attorney work from April 20, 2017 through May 3, 2017, that predates the filing of the complaint on May 18, 2017 and the commencement of the litigation, but are billed at an hourly rate of $195.  Invoice at 9–10.  According to Ms. Thall's

Ms. Thall represents that the firm's rates are "significantly below the market rates for attorneys of commensurate experience performing similar legal services." *Id.* ¶ 13. In support of this assertion, she refers to the rates charged by the U.S. Attorney's Office for the District of Columbia's *Laffey* matrix for attorneys of similar experience and for paralegals — $332 and $157, respectively — both higher than the rates charged by Mooney Green in this matter. *Id.* & Ex. B (USAO Attorney's Fees Matrix – 2015–2017). In addition, Ms. Thall provides evidence of the attorney's fees charged and awarded in similar matters. *Id.* ¶¶ 14–15; *id.*, Ex. C (Declaration of H. David Kelly Jr., of Beins, Axelrod, P.C.); *id.*, Ex. D (Declaration of Charles V. Mehler III, of Dickstein Shapiro LLP). The attorney's fees charged by a partner, as reflected in the Dickstein Shapiro declaration, are not an appropriate comparison. *See also* Thall Decl. ¶ 14. However, the other record evidence indicates that the rates requested are reasonable, as they are well below market rates. *See, e.g.*, *Barron*, 317 F. Supp. 3d at 163 (finding reasonable rates of $295 per hour for an attorney "[g]iven that the firm charged below-market rates"); *Hetrick*, 277 F. Supp. 3d at 121 (finding rates of $250/350 per hour for attorneys and $128–$175 for paralegals reasonable "given that counsel charged below-market rates and tried to maximize the work performed by lower-cost paralegals").

In addition, Ms. Thall states that the Fund incurred $400 in costs to file the complaint and $301 for a process server, and the invoice reflects such expenses. Thall Decl. ¶¶ 9, 11. Under ERISA, "Plaintiffs are entitled to recover court fees." *Barron*, 317 F. Supp. 3d at 162; *see* 29 U.S.C. § 1132(g)(2)(D) (requiring the court to award "reasonable . . . costs of the action").

---

declaration, attorney work for these dates should be billed at an hourly rate of $150. *See* Thall Decl. ¶ 10.

Accordingly, the undersigned recommends awarding a total of $701.00 for the costs of the complaint and the process server.

In total, the undersigned recommends that the Court award $6,550.50 in attorney's fees and costs as requested by Plaintiffs. Although the above analysis identifies discrepancies in the number of hours claimed by the attorneys and the amount charged before commencement of litigation, the total amount of attorney's fees and costs requested by Plaintiffs is less than the amount determined by the undersigned's calculation, taking into account these discrepancies, and is therefore reasonable.

### D.      Injunctive Relief

Plaintiffs also seek injunctive relief, requesting that the court order the submission of outstanding reports for the period of January 2014 through April 2017,[8] and the payment of "any additional amounts found due and owing following the production of the reports." Pls.' Mot. at 1; Compl., Count I ¶ 2 & Count II ¶ 2. According to Plaintiffs' complaint, this includes unpaid contributions and associated interest and liquidated damages. Compl., Count I ¶ 2 & Count II ¶ 2. ERISA authorizes the court to grant "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); *see, e.g.*, *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 69. As discussed *supra*, the undersigned found that Employers failed to submit remittance reports as required under the CBA from January 2014 through April 2018. *See supra* Part III.B; *see also* Compl. ¶¶ 32, 42. The undersigned recommends granting Plaintiffs' request

---

[8] Although Ms. Smith's declaration states that remittance reports were not submitted from January 1, 2014 through April 2018, *see* Smith Decl. ¶ 26, Plaintiffs' Motion does not expressly identify the time range for which they seek remittance of the outstanding reports. Plaintiffs' Motion simply states that they seek the submission of "outstanding reports." Pls.' Mot. at 1. Given that Plaintiffs' Complaint requests the submission of outstanding reports for the period of January 2014 through April 2017, the Court limits consideration of injunctive relief to that period. *See* Compl., Count I ¶ 2 & Count II ¶ 2.

for injunctive relief, as Employers have failed to comply with their obligations under the CBAs and have further failed to participate in this action, as demonstrated in the analysis above. *See Elite Terrazzo Flooring*, 763 F. Supp. 2d at 69 (granting injunctive relief of submission of remittance reports and contributions where "defendant has not complied with the CBAs or ERISA and has declined to participate in this litigation"); *Int'l Painters & Allied Trades Indus. Pension Fund v. Exec. Painting, Inc.*, 719 F. Supp. 2d 45, 53 (D.D.C. 2010) (granting relief of, *inter alia*, submission of outstanding reports and contributions where "defendant has not complied with the CBAs or ERISA and has remained unresponsive throughout the judicial process").

### E.   Joint and Several Liability

Plaintiffs maintain that LTP Generations and LTP Heritage are jointly and severally liable for the amounts they owe the Fund. *See* Pls.' Mem. at 15. In support of this argument, Plaintiffs contend that District of Columbia law applies in determining joint and several liability in this action. The undersigned agrees.

The Fund's Trust Agreement includes a choice of law provision, which provides that except where federal law "requires a different construction," the "terms and provisions" of "the Plan shall be construed in accordance with the laws of the District of Columbia." Compl., Ex. 3 ("Trust Agreement") § 13.1, ECF No. 1-3. Plaintiffs cite to no federal law in their briefing on joint and several liability, and the undersigned's review has identified no federal law which may otherwise apply in making this determination. In addition, "[c]ourts have held that where a choice of law is made in an ERISA contract, 'it should be followed, if not unreasonable or fundamentally unfair.'" *See* Memorandum Opinion at 8 n.5, Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. The McCoy Co. (No. 16-1693) (D.D.C. Nov. 21, 2017), ECF No. 10

(quoting *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001)).  Here, applying

District of Columbia law is "neither unreasonable or fundamentally unfair" where the contract

involves a plan administered in the District of Columbia.  *See id.*; *see also* Compl. ¶ 3.

Moreover, application of District of Columbia contract principles in this case would not

otherwise "be subversive of ERISA policy."  *See Buce*, 247 F.3d at 1148.

Under District of Columbia law, a contract entered into between two or more persons is

"deemed to be joint and several."  D.C. CODE § 16-2101.  Both the 2012 and 2014 CBAs refer to

the Defendants collectively as the "Employer."  *See* 2012 CBA at 6; 2014 CBA at 4.

Additionally, Tony Perez is the owner and signatory on behalf of both entities in these

agreements.  *See* 2012 CBA at 30; 2014 CBA at 30; Compl. ¶ 12.b.  Therefore, the undersigned

recommends that the Court find the Defendants jointly and severally liable for damages owed to

Plaintiffs.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court partially grant and

partially deny Plaintiffs' Motion for Default Judgment.  The undersigned recommends finding

Defendants jointly and severally liable and awarding: unpaid contributions, including PPA

supplemental contributions; interest (through June 2018); liquidated damages; testing fees, as set

forth below.

| TOTALS | LTP Generations | LTP Heritage | Total |
|---|---|---|---|
| **Unpaid contributions (including PPA Supplemental)** | $156,083.37 | $119,216.21 | $275,299.58 |
| **Interest (through June 2018)** | $44,143.59 | $36,746.66 | $80,890.25 |
| **Liquidated Damages** | $32,558.00 | $25,716.66 | $58,274.66 |
| **Testing Fee** | $1,075.90 | $1,075.90 | $2,151.80 |
| | | **TOTAL:** | $416,616.29 |

The undersigned also recommends awarding $6,550.50 in attorney's fees and costs. Finally, the undersigned recommends awarding injunctive relief of: (1) the submission of outstanding remittance reports for the period of January 2014 through April 2017; and (2) any additional outstanding contributions found as a result of these reports, including resulting interest and liquidated damages, consistent with the analysis set forth above.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to this Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

2019.03.14
18:48:29 -04'00'

Dated:   March 14, 2019

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE